Natu J. Patel, SBN 188618
Daniel H. Ngai, SBN 302297
Kunal Jain, SBN 296642
**THE PATEL LAW FIRM, P.C.**
22952 Mill Creek Drive
Laguna Hills, California 92653
Phone:      949.955.1077
Facsimile:   949.955.1877
NPatel@thePatelLawFirm.com

Attorneys for Plaintiff,
Starbuzz Tobacco, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARBUZZ TOBACCO, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> SAMBA PREMIUM TOBACCO, a business entity form unknown; SASHA JOSEF FRIWAT, an individual; LEBANUSHI CORPORATION, a California corporation; IHAB ELZEINI, an individual; and DOES 1-10, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> 1. TRADEMARK INFRINGEMENT - (UNDER 15 U.S.C. § 1114); <br><br> 2. COMMON LAW TRADEMARK INFRINGEMENT <br><br> 3. DERIVATIVE TRADEMARK INFRINGEMENT – INDUCING INFRINGEMENT <br><br> 4. UNFAIR BUSINESS PRACTICES (UNDER CA. BUS. & PROF. CODE § 17200 et seq.); <br><br> 5. COMMON COUNT: GOODS AND SERVICES RENDERED <br><br> 6. COMMON COUNT: OPEN BOOK ACCOUNT <br><br> **DEMAND FOR JURY TRIAL** |

PLAINTIFF, Starbuzz Tobacco, Inc. complains and alleges as follows:

## PARTIES

1.      Plaintiff, Starbuzz Tobacco, Inc., ("Plaintiff" or "Starbuzz"), is now, and at all times relevant herein was, a corporation organized under the laws of the State of California, with its principal place of business in the City of Garden Grove, California.

**The Samba Defendants.**

2.      Starbuzz is informed and believes, and on that basis alleges, that Defendant Samba Premium Tobacco ("Samba"), is now, and at all times relevant herein was, a business entity of unknown form, with its principal place of business in Valley Center, California.

3.      Starbuzz is informed and believes, and on that basis alleges, that Defendant Sasha Josef Friwat ("Friwat"), is, and at all times relevant hereto, was an individual residing in the State of California.

4.      Starbuzz is informed and believes, and on that basis alleges, that Friwat has been, and continues to be doing, business as Samba.  Starbuzz is further informed and believes, and on that basis alleges, that Friwat is responsible for controlling and directing the activities of Samba.  Friwat and Samba are collectively referred herein as the "Samba Defendants."

**The Lebanushi Defendants.**

5.     Defendant, Lebanushi Corporation ("Lebanushi"), is, and at all times relevant hereto was, a California corporation, with its principal place of business in the City of Buena Park, Orange County, California.

6.     Defendant, Ihab Elzeini ("Elzeini"), is, and at all times relevant hereto was, an individual residing in Orange County, State of California.

7.     Starbuzz is informed and believes, and on that basis alleges, that Elzeini is responsible for controlling and directing Lebanushi's activities.  Elzeini and Lebanushi are collectively referred herein as the "Lebanushi Defendants."

8.     Starbuzz is further informed and believes, and on that basis alleges, that the Lebanushi Defendants operate a restaurant/hookah lounge business known as Golden Nights, which is located in Buena Park, California ("Golden Nights"). Starbuzz is informed and believes, and on that basis alleges, that Elzeini is responsible for controlling and directing the activities of Golden Nights.

9.     Starbuzz is informed and believes, and on that basis alleges, that Defendants Elzeini, Lebanushi, Friwat, and Samba are responsible for their acts and for their conduct, which are the true legal causes for the damages herein alleged.

## DOE ALLEGATIONS

10.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff, therefore, sue said defendants by such fictitious names.  Plaintiff will ask leave of Court to amend this Complaint when the same shall have been ascertained.  Plaintiff is informed and believe, and based thereon allege that, each DOE defendant was responsible intentionally, or in some other actionable manner, for the events and happenings referred to herein, which proximately caused injury and damage to Plaintiff, as hereinafter alleged.

11.     Any reference to Defendants shall refer to each named defendant and all DOE defendants, and to each of them.

## AGENCY

12.     At all times herein mentioned, each Defendant was the agent, servant, joint venturer, partner, or employee of the other Defendants, successor corporations, successors in interest, or entities and, in doing the things herein alleged, were acting within the purpose and scope of said agency or employment at the time of the alleged acts.  All Defendants were acting within the scope and course of that agency and employment and with the knowledge and implied and/or express consent and permission of the other Defendants.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. §§ 1117 and 1121, and 28 U.S.C. §§ 1331 and 1338, in that this Complaint raises federal questions under the United States Trademark Act (Lanham Act), 15 U.S.C. § 1051 et seq.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     The Court has personal jurisdiction over Defendants because they have purposefully engaged in using trademarks that are confusingly similar to Starbuzz's trademarks in connection with the sale and distribution of tobacco products in the United States.  Since Starbuzz's extensive use and registered trademarks provide constructive notice of Starbuzz's intellectual property rights and Starbuzz's location, Defendants knew or should have known that their activities were directed towards California, and the effect of those activities would be felt in California.

15.     The Court also has personal jurisdiction over Defendants because they have engaged in business activities in and directed to California, and have committed tortious acts within the State.

16.     The Court also has personal jurisdiction over Defendants because they have purposefully availed themselves of the opportunity to conduct commercial activities in this forum.  The Complaint arises out of those commercial activities.

17.     Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c) in that substantial injury occurred and continues to occur in this district, a substantial portion of the events that are the subject of this action took place in this district, and Defendants are doing business within this judicial district.

## INTRODUCTION

18.     This case is about Defendants' egregious infringement of Starbuzz's intellectual property rights, and other violations of federal and state law.  It is egregious because Defendants have intentionally adopted, used, and continue to use trademarks that are identical or substantially similar to Starbuzz's trademarks and products with blatant disregard to Starbuzz's intellectual property rights, in order to unfairly compete with Starbuzz and to trade upon Starbuzz's goodwill.

19.     As a manufacturer and supplier of premium hookah tobacco and flavored tobacco, as well as a distributor of hookahs, electronic cigarettes, and other related products worldwide, Starbuzz has obtained over two hundred (200) federally registered trademarks in the United States and has sought to obtain worldwide intellectual property protection in more than fifty (50) countries.

20.     With full knowledge of Starbuzz's expansive trademarks and related reputation for its high-quality tobacco products, the Samba Defendants intentionally adopted, used, and sold tobacco and tobacco-related products which infringe upon many of Starbuzz's registered trademarks.  In addition, the

Lebanushi Defendants have knowingly and intentionally contributed to, directed, and induced trademark infringement by the Samba Defendants by selling Samba's infringing products as a replacement to Starbuzz's products in order to deceive consumers into believing that the Infringing Products are produced and manufactured by Starbuzz, or that they are of the same high-quality as Starbuzz's products.

FACTS

**OWNERSHIP OF THE STARBUZZ MARKS.**

21.    Starbuzz owns several trademark registrations from the United States Patent and Trademark Office ("USPTO"):

| **Trademark** | **Reg. No.** | **Register** | **First Use In Commerce** |
|---|---|---|---|
| GRAPE FREEZE | 4,477,049 | Principal | 12/16/2012 |
| WATERMELON FREEZE | 4,287,967 | Principal | 01/27/2012 |
| SAFARI MELON DEW | 3,619,357 | Principal | 01/02/2007 |
| IRISH KISS | 4,291,184 | Principal | 01/27/2012 |
| IRISH PEACH | 4,291,175 | Principal | 01/26/2012 |
| STRAWBERRY PASSION | 3,695,508 | Principal | 01/21/2009 |
| PASSION KISS | 3,543,557 | Principal | 07/15/2005 |
| PASSION TEA | 4,788,147 | Principal | 08/01/2013 |

| FRUIT SENSATION | 3,540,260 | Principal | 07/15/2005 |
|---|---|---|---|
| DESERT ROSE | 3,619,355 | Principal | 01/09/2008 |
| SEX ON THE BEACH | 2,135,883 | Principal | 12/31/1996 |
| SEX ON THE BEACH | 3,838,818 | Principal | 01/04/2006 |
| PEACH QUEEN | 4,619,296 | Principal | 09/19/2008 |
| QUEEN OF SEX | 4,745,825 | Principal | 01/12/2006 |

True and correct copies of the registration certificates for each of these marks (collectively, the "Starbuzz Marks") are attached collectively hereto as **Exhibit A.**

22.     Starbuzz has been using the Starbuzz Marks extensively in commerce for the past several years in connection with the sale of flavored tobacco, hookah tobacco, and other related products ("Starbuzz Products").

23.     At all times relevant herein, Starbuzz has been, and still is, the owner of the exclusive rights, title, and interest in the Starbuzz Marks in connection with the sale of tobacco, tobacco alternatives, and other related products, and has the full and exclusive rights to bring suit to enforce its trademark rights, including the right to recover for past infringement.

Complaint

## STARBUZZ'S CONTINUOUS USE OF ITS MARKS.

24.     Starbuzz manufactures, distributes, imports, and sells tobacco products and other related products throughout the United States and internationally.  Starbuzz prides itself on its reputation for high-quality products.

25.     Starbuzz sells its products to thousands of customers and clients, including boutique stores, wholesalers, and suppliers.  Starbuzz has used, created, and marketed under the Starbuzz Marks continuously over the years.  The Starbuzz Marks have brought Starbuzz enormous success, and Starbuzz is now known for its high quality products.

26.     Starbuzz uses the Starbuzz Marks on advertising brochures, advertising leaflets, on the Internet, and on the packaging of its products.  As a result, Starbuzz's intellectual property and brand identity have substantial image recognition.

27.     The Starbuzz Marks are important as they serve as easily-recognizable identifiers of the high quality goods and services that Starbuzz offers.  There is a particularly close association among consumers between Starbuzz, the Starbuzz Marks, and the quality of the products and services offered under the Starbuzz Marks.  For consumers and vendors, the Starbuzz Marks are associated with original, flavorful, and smooth smoking tobacco, tobacco alternatives, and related products of the highest quality at an affordable price.

**DEFENDANTS' WRONGFUL ACTS**.

**The Samba Defendants' Sales and Distribution of Infringing Products.**

28.     Starbuzz is informed and believes, and on that basis alleges that the Samba Defendants are using, displaying, and selling products bearing the infringing marks "BRAIN FREEZE," "IRISH REVOLUTION," "PASSION FRUIT," "ROSE," "SAMBA ON THE BEACH," and "SAMBA QUEEN" (collectively, the "Infringing Marks") in this judicial district.

29.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants intentionally adopted, used, and/or sold products bearing the Infringing Marks in connection with, among other things, the sale of tobacco, flavored tobacco, and hookah tobacco ("Infringing Products"), to falsely convey to consumers, vendors, and third parties an association with Starbuzz, and to unfairly trade and benefit from the reputation and goodwill of Starbuzz's business and the Starbuzz Marks.

30.     Specifically, Starbuzz is informed and believes, and on that basis alleges that the Samba Defendants have sold and advertised, and are currently selling and advertising, the Infringing Products in California and throughout the United States via the Internet including, but not limited to, its website http://www.sambatobacco.com (the "Samba Website").  True and correct copies of images showing various flavored tobacco products on sale on the Samba Website

are attached collectively hereto as **Exhibit B**.

31.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants are aware of the Starbuzz Marks by virtue of Starbuzz's trademark registrations, Starbuzz's reputation in the tobacco market, and through Starbuzz's extensive sales of flavored tobacco products throughout the United States and all over the world.

32.     Starbuzz is informed and believes, and on that basis alleges, that despite this knowledge, the Samba Defendants adopted and/or used the Infringing Marks to advertise, sell, and offer for sale, the Infringing Products, to deceive consumers into believing that the Infringing Products are produced and manufactured by Starbuzz, and to trade upon Starbuzz's goodwill.

33.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants began using the Infringing Marks after Starbuzz began using the Starbuzz Marks in commerce.  Therefore, Starbuzz's rights in the Starbuzz Marks have priority over the Samba Defendants' rights in the Infringing Marks.

**The Samba Defendants' Use of the Infringing Marks is Likely to Cause Consumer Confusion.**

34.     The Samba Defendants' continued sale and distribution of the Infringing Products bearing the Infringing Marks is likely to cause consumer confusion.

35.     Starbuzz is informed and believes, and on that basis alleges, that given the similar or related nature of the Starbuzz Products and the Infringing Products, and the similarity between the Infringing Marks and the Starbuzz Marks, consumers are likely to be confused as to the source of the Starbuzz Products and the Infringing Products.

36.     Starbuzz is further informed and believes, and on that basis alleges, that the Samba Defendants intentionally, and in bad faith, adopted and used the Infringing Marks to trade upon the fame and goodwill associated with the Starbuzz Marks, to deceive consumers, vendors and third parties, to attract new business in competition to Starbuzz, and to derive an economic benefit therefrom.

37.     In addition, the Samba Defendants knowingly used and continue to use the Infringing Marks without Starbuzz's consent or authorization.

38.     The products that the Samba Defendants offer under the Infringing Marks are in the same category of products which Starbuzz offers under the Starbuzz Marks.  Therefore, the Samba Defendants' use of the Infringing Marks is likely to cause consumer confusion.

39.     Starbuzz and the Samba Defendants sell their products online and through wholesalers, distributors, and retailers.  Starbuzz and the Samba Defendants thus have convergent marketing channels.

40.     Starbuzz is further informed and believes, and on that basis alleges, that Starbuzz and the Samba Defendants have convergent marketing channels since they sell and market products within the same geographic area.

41.     The Samba Defendants' use of convergent marketing channels increases the likelihood of consumer confusion.

42.     The Samba Defendants' continued use of the Infringing Marks is thus likely to lead consumers, retailers, wholesalers, and vendors to mistakenly conclude that the Samba Defendants' Infringing Products are affiliated, connected, or associated with Starbuzz.  Consumers are likely to be misled and confused as to the true source, sponsorship, or affiliation of the Infringing Products.

**The Lebanushi Defendants' Wrongful Conduct and Inducement of Infringement.**

43.     In addition, Starbuzz is informed and believes, and on that basis alleges, that the Lebanushi Defendants have intentionally assisted and induced the sales, marketing, and distribution of the Infringing Products bearing the Infringing Marks including, but not limited to, "ROSE" through its restaurant/hookah lounge, Golden Nights.

44.     Beginning in or around September 2013, Starbuzz and the Lebanushi Defendants entered into an ongoing business relationship wherein Starbuzz and the Lebanushi Defendants entered into an ongoing business relationship wherein the Lebanushi Defendants agreed to purchase various Starbuzz products to Golden

Nights.  The Lebanushi Defendants, in turn, were authorized to sell and distribute these products to customers at Golden Nights.

45.     However, between September 4, 2013 and September 29, 2015, the Lebanushi Defendants failed to make consistent payments to Starbuzz on all goods sold and delivered.  Starbuzz is informed and believes, and thereon alleges, that the amount owed by the Lebanushi Defendants to Starbuzz for the unpaid products exceeds $32,000.  A true and correct copy of Starbuzz's invoice summary showing the Lebanushi Defendants' "Open Balance" is attached hereto as **Exhibit C**.  As a result, Starbuzz terminated the business relationship and stopped selling products to the Lebanushi Defendants in or around January 2016.

46.     Starbuzz is informed and believes, and on that basis alleges, that subsequent to ending the relationship, the Lebanushi Defendants started selling the Infringing Products at Golden Nights to replace the Starbuzz Products.  A true and correct copy of a menu from Golden Nights showing the Lebanushi Defendants' offer to sell at least one of the Infringing Products, namely "ROSE", is attached hereto as **Exhibit D**.

47.     Starbuzz is informed and believes, and on that basis alleges, that the Lebanushi Defendants advertise, promote, and sell at least one of the Infringing Products at Golden Nights.  A true and correct copy of an advertisement showing

the sale or distribution of Samba tobacco products at Golden Nights is attached hereto as **Exhibit E**.

48.     Starbuzz is informed and believes, and on that basis alleges, that the Lebanushi Defendants specifically partnered with the Samba Defendants to promote, sell, and offer for sale the Infringing Products as a replacement to the Starbuzz Products which bear the Starbuzz Marks.

49.     The Lebanushi Defendants were, and continue to be, aware of the Starbuzz Marks through their prior business relationship and purchases of various Starbuzz Products.

50.     However, Starbuzz is further informed and believes, and on that basis alleges, that the Lebanushi Defendants intentionally assisted, directed, and induced and continues to intentionally assist, direct, and induce the Samba Defendants in marketing and selling the Infringing Products in an effort to deceive consumers into believing that the Infringing Products are produced and manufactured by Starbuzz, or that the Infringing Products are of the same high-quality as Starbuzz's products, and to trade upon Starbuzz's goodwill.

## FIRST CLAIM FOR RELIEF
### [Trademark Infringement Under Lanham Act 15 U.S.C. § 1114]
### (Against the Samba Defendants)

51.     Starbuzz re-alleges and incorporates by this reference paragraphs 1 through 50, inclusive, of this Complaint as if fully set forth herein.

52.     The Samba Defendants' use of the Infringing Marks to promote, market, or sell Infringing Products constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

53.     The Samba Defendants have promoted, sold, and marketed tobacco products using the Infringing Marks, which are identical or confusingly similar to the Starbuzz Marks.

54.     Starbuzz is informed and believes, and on that basis alleges, that its use of the Starbuzz Marks in commerce predates the Samba Defendants' use of the Infringing Marks in commerce.

55.     The Starbuzz Marks are highly distinctive, arbitrary and/or fanciful, and are entitled to strong trademark protection.

56.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants continue to promote, sell, and market the Infringing Products, in direct competition with the Starbuzz Products, which Starbuzz promotes, sells, and markets under the Starbuzz Marks. The Samba Defendants therefore use the Infringing Marks on the same, related, or complementary category of goods as Starbuzz.

57.     The Samba Defendants' Infringing Marks are so similar in appearance, pronunciation, meaning, and commercial impression to the Starbuzz

Marks that consumers are likely to be confused as to the source of the parties' products.

58.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants market and sell their products throughout the United States through various channels, including, but not limited to, the Internet, retail stores and shops.  These are the same channels through which Starbuzz markets and sells its goods.

59.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants intentionally and willfully adopted the Infringing Marks in an effort to deceive or cause confusion with the consuming public.

60.     The Samba Defendants' attempts to cause confusion, or to cause mistake, or to deceive further indicate an intentional and willful infringement upon the Starbuzz Marks.

61.     The Samba Defendants' continued use of the Infringing Marks also demonstrates Defendants' intentional and willful infringement of the Starbuzz Marks.

62.     The Samba Defendants' intentional, continuing, and willful infringement of the Starbuzz Marks has caused, and will continue to cause, damage to Starbuzz, and is causing irreparable harm to Starbuzz for which there is no adequate remedy at law.

63.     As a proximate and direct result of the Samba Defendants' acts as herein alleged, Starbuzz has sustained damages in an amount to be proven at trial.

64.     The Samba Defendants are directly, contributorily, and/or vicariously liable for these actions.

**SECOND CLAIM FOR RELIEF**
**[Common Law Trademark Infringement and Unfair Competition]**
**(Against the Samba Defendants)**

65.     Starbuzz re-alleges and incorporates by this reference paragraphs 1 through 64, inclusive, of this Complaint as if fully set forth herein.

66.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants' aforesaid acts constitute actionable wrongs under the common law in that Samba Defendants' use of the Infringing Marks constitutes an infringement and violation of Starbuzz's rights in its trademarks.

67.     In addition, the Samba Defendants' aforesaid acts create a likelihood that Starbuzz's customers, potential customers, and the public generally will be confused or misled as to the source of goods and services because they are likely to believe that the Samba Defendants' products are identical to or affiliated with those of Starbuzz.

68.     By reason of the foregoing unlawful acts, the Samba Defendants have caused, and continue to cause, substantial and irreparable damage and injury to Starbuzz and to the public.  The Samba Defendants have benefited from such

unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

69.     As a proximate and direct result of Defendants' acts as herein alleged, Starbuzz has sustained damages in an amount to be proven at trial.

70.     The Samba Defendants are directly, contributorily and/or vicariously liable for these actions.

### THIRD CLAIM FOR RELIEF
### [Derivative Infringement - Inducement]
### (Against the Lebanushi Defendants)

71.     Starbuzz re-alleges and incorporates by this reference paragraphs 1 through 70, inclusive, of this Complaint as if fully set forth herein.

72.     Starbuzz is informed and believes, and on that basis alleges, that the Samba Defendants' use of the Infringing Marks to promote, market, or sell Infringing Products constitutes trademark infringement pursuant to 15 U.S.C. § 1114.

73.     Starbuzz is informed and believes, and on that basis alleges, that the Lebanushi Defendants knowingly and intentionally induced the Samba Defendants to infringe on the Starbuzz Marks through marketing and sales of the Infringing Products at Golden Nights.

74.     Starbuzz is informed and believes, and on that basis alleges, that the Lebanushi Defendants were, and are, aware of the Starbuzz Marks and the

Starbuzz Products, but continue to intentionally market and sell various Infringing Products to trade upon Starbuzz's goodwill.

75.    As a proximate and direct result of the Lebanushi Defendants' acts as herein alleged, Starbuzz has sustained damages in an amount to be proven at trial.

76.    The Lebanushi Defendants are directly, contributorily and/or vicariously liable for these actions.

**FOURTH CLAIM FOR RELIEF**
**[Unfair Competition – Violation of California**
**Business and Professions Code § 17200 et seq.]**
**(Against All Defendants)**

77.    Starbuzz re-alleges and incorporates by this reference paragraphs 1 through 76, inclusive, of this Complaint as if fully set forth herein.

78.    Starbuzz is informed and believes, and on that basis alleges, that Defendants' aforesaid acts constitute actionable wrongs under California Business and Professions Code § 17200 *et seq.* in that Defendants' unlawful, unfair, or fraudulent use of words, terms, names, symbols, or devices, or a combination thereof, which are similar to the Starbuzz Marks, create a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Starbuzz's and Defendants' goods.

79.    Starbuzz is informed and believes, and on that basis alleges, that Defendants have offered and continue to market goods using words, terms, names,

symbols, or devices, or a combination thereof, which are similar to the Starbuzz

Marks, in an attempt to unfairly compete with Starbuzz.

80.     Starbuzz is further informed and believes, and on that basis alleges,

that Defendants have also been attempting to unfairly compete with Starbuzz

through the use of deceptive and/or misleading advertising.

81.     By reason of the foregoing unlawful acts, Defendants have caused,

and continue to cause, substantial and irreparable damage and injury to Starbuzz

and to the public.  Defendants have benefited from such unlawful conduct, and will

continue to carry out such unlawful conduct and to be unjustly enriched thereby,

unless enjoined by this Court.

82.     As a proximate and direct result of Defendants' acts as herein alleged,

Starbuzz has sustained damages in an amount to be proven at trial.

83.     Defendants are directly, contributorily and/or vicariously liable for

these actions.

**FIFTH CLAIM FOR RELIEF**
**[COMMON COUNT: FOR GOODS AND SERVICES RENDERED]**
**(Against the Lebanushi Defendants)**

84.     Plaintiff re-alleges and incorporates by this reference paragraphs 1

through 83, inclusive, of this Complaint as if fully set forth herein.

85.     Beginning in or about September 2013, Starbuzz and the Lebanushi

Defendants entered into an ongoing business relationship wherein the Lebanushi

Defendants agreed to purchase various Starbuzz products, which were to be sold at a profit at Golden Nights for the benefit of the Lebanushi Defendants.

86.    Starbuzz performed all conditions required of it by delivering all the goods as ordered by the Lebanushi Defendants.

87.    As of the date of this complaint, the Lebanushi Defendants have not paid for all of the goods sold and delivered by Starbuzz to the Lebanushi Defendants.

88.    The Lebanushi Defendants owe Starbuzz over $32,000 for the unpaid goods sold and delivered.

89.    As a direct and proximate result of the Lebanushi Defendants' failure to pay Starbuzz, Starbuzz has been damaged in an amount according to proof at trial, together with interest thereon.

90.    The Lebanushi Defendants are directly, contributorily, and/or vicariously liable for these actions.

### SIXTH CLAIM FOR RELIEF
### [COMMON COUNT: OPEN BOOK ACCOUNT]
### (Against the Lebanushi Defendants)

91.    Plaintiff re-alleges and incorporates by this reference paragraphs 1 through 90, inclusive, of this Complaint as if fully set forth herein.

92.    Beginning in or about September 2013, Starbuzz and the Lebanushi Defendants entered into multiple financial transactions wherein the Lebanushi

Complaint

Defendants agreed to purchase various Starbuzz products for delivery to Golden Nights.

93.     Starbuzz kept an account of the debits and credits involved in the transactions.

94.     Starbuzz delivered all the goods as ordered by the Lebanushi Defendants but the Lebanushi Defendants have not paid for all of the goods sold and delivered by Starbuzz to the Lebanushi Defendants.

95.     The Lebanushi Defendants owe Starbuzz over $32,000 for the unpaid goods sold and delivered.

96.     As a direct and proximate result of the Lebanushi Defendants' failure to pay Starbuzz, Starbuzz has been damaged in an amount according to proof at trial, together with interest thereon.

97.     The Lebanushi Defendants are directly, contributorily, and/or vicariously liable for these actions.

## PRAYER FOR RELIEF

WHEREFORE, Starbuzz respectfully prays for judgment against Defendants as follows:

## ON THE FIRST, SECOND, AND THIRD CLAIMS:

1.     An Order finding that Samba Defendants have infringed Starbuzz's intellectual property rights;

2.     An Order finding that Lebanushi Defendants have induced the infringement of Starbuzz's intellectual property rights;

3.     An Order requiring the Defendants to account for and disgorge any and all profits received by the use of Starbuzz's intellectual property pursuant to 15 U.S.C. § 1117(a)(1);

4.     An award of the attorneys' fees and costs of this action, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1117 and other applicable federal and state law;

5.     An Order directing the recall from the marketplace and destruction of the Infringing Products, or any products bearing marks confusingly similar to the Starbuzz Marks for purposes of advertising or selling, or soliciting purchases of products or services, or products sold in the course of providing such services, or any related activities, pursuant to 15 U.S.C. § 1118;

6.     A preliminary and permanent injunction, pursuant to 15 U.S.C. § 1116, enjoining and prohibiting Defendants and any of their officers, directors, employees, agents, subsidiaries, distributors, dealers, and all persons in active concert or participation with any of them from:

A. Using the Infringing Marks, or any marks confusingly similar to the Starbuzz Marks, in any manner, on or in products, merchandise, or goods, or for

purposes of advertising, selling, or soliciting purchases of, products or merchandise;

      B.  Infringing on Starbuzz's trademarks;

      C.  Assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (A) and (B) above;

      7.    An Order requiring the Defendants and their agents, servants, and employees and all persons acting in concert with or for them to file with this Court and serve on Starbuzz, within thirty (30) days after service of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which the Defendants have complied with the applicable injunction, pursuant to 15 U.S.C. § 1116;

      8.    Pre-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

      9.    Any other or further relief that the Court deems appropriate, proper, and just.

## ON THE FOURTH CLAIM:

      1.    An Order finding that Defendants have infringed Starbuzz's intellectual property rights and unfairly competed with Starbuzz;

2.      Judgment for Starbuzz and against Defendants for actual, special, and consequential damages, in an amount to be proven at trial and for costs incurred in the litigation;

3.      An Order requiring Defendants to account for and disgorge all gains, profits, and advantages from the violations of California State, and common law;

4.      A preliminary and permanent injunction, enjoining and prohibiting Defendants and any of his officers, directors, employees, agents, subsidiaries, distributors, dealers, and all persons in active concert or participation with any of them from using the Infringing Marks to advertise, solicit business, or otherwise compete with Starbuzz.

5.      Pre-judgment interest on any amounts awarded at the maximum legal rate as permitted by law and equity; and

6.      Any other or further relief that the Court deems appropriate, proper, and just.

## ON THE FIFTH AND SIXTH CLAIMS:

1.      General damages against the Lebanushi Defendants according to proof;

2.      Pre and post-judgment interest against the Lebanushi Defendants according to law; and

3.      Such other and further relief as the court deems proper and equitable

DATED: May 23, 2016

Respectfully Submitted,

**THE PATEL LAW FIRM, P.C.**

Natu J. Patel,
Daniel H. Ngai,
Kunal Jain
Attorneys for Plaintiff
Starbuzz Tobacco, Inc.

Complaint

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff Starbuzz Tobacco, Inc. hereby demands a trial by jury on all issues triable by jury.

DATED: May 23, 2016

Respectfully Submitted,
**THE PATEL LAW FIRM, P.C.**

Natu J. Patel,
Daniel H. Ngai,
Kunal Jain
Attorneys for Plaintiff
Starbuzz Tobacco, Inc.